# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| GILBERT P. HYATT,<br><br>      Plaintiff,<br><br>v.<br><br>COKE MORGAN STEWART, Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office,<br><br>      Defendant. | Civil Action No. 1:25-cv-00411 |

## COMPLAINT

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

### Nature of the Action

1. This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 08/470,569 (Dkt. #793). For over two decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the '569 Application in the U.S. Patent and Trademark Office ("PTO"), as well as several hundred co-pending applications.

2. Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. Mr. Hyatt brings this action to obtain a patent in this application.

### Parties

3. Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing,

illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 86 years of age and resides in Clark County, Nevada.

4.      Defendant Coke Morgan Stewart is the Acting Under Secretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office. She has overall responsibility for the administration and operation of the PTO, including the patent examination process. She is named as a defendant in his official capacity only.

## Jurisdiction and Venue

5.      This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

7.      This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

8.      This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

## The '569 Application

9.      Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 08/470,569 (Dkt. #793) (the "'569 Application").

10.     The '569 Application has the benefit of the filing date of U.S. Patent Application Serial No. 06/663,094 (Dkt. #303) filed on October 19, 1984.

11.     The '569 Application includes the following 310 claims: 108, 111, 112, 115, 118–122, 124, 128, 131, 134, 135, 139, 142, 145–147, 149, 150, 153–155, 160, 161, 164, 168, 170, 172, 179, 180, 183, 192, 194, 195, 197–202, 204, 207, 209, 210, 213, 214, 216–222, 225, 226, 228, 229, 232, 234–236, 240–243, 245, 247, 249, 253–255, 257, 258, 262, 264, 265, 270–272, 274, 276, 277, 279–287, 289, 291, 292, 294–297, 299–301, 303, 304, 306, 307, 310, 312, 313, 318–320, 324–332, 335, 336, 338–347, 349–352, 354–356, 358, 359, 361–364, 366–

369, 371, 372, 374, 375, 377–379, 383–386, 388–394, 396, 397, 399–403, 405–407, 409–425, 427–429, 432–439, 441–454, 457–461, 463, 464, 467, 469, 471–474, 476–479, 481, 483, 484, 487–500, 502–529, 531, 532, 534, 536, 537, 540, 542–546, 548, 549, 551–558, and 560–565 (the "Subject Claims").

12. Mr. Hyatt is seeking issuance of a patent on the Subject Claims, but not on any other claims in the '569 Application.

13. The Subject Claims in the '569 Application are generally directed to the following subject matter:

   a. processes of performing various specified operations based on radial scanning or polar coordinate scanning of rotating image information generated by transform processing video information received from plural video sources having different views or different perspectives of an environment or viewing the environment from different locations;

   b. a process of generating 64-pixel blocks of weighted, scaled image information based on infrared information, GPS information, and database information accessed from a charge storage memory using database memory management operations;

   c. a process of generating pattern recognition information based on kernel filtered image information, radar information, navigation information, and database information accessed from a charge storage memory using database memory management operations, where the kernel filtered image information is also based on the radar information, but without recitation of any of non-volatile memory, GPS, infrared, or subpixel;

   d. a process of spatially interpolating based on image information, inertial information, and database information accessed from a charge storage memory using database memory management operations;

3

    e. a process of generating transformed image information based on image information, GPS information, and database information accessed from a charge storage memory using database memory management operations, but without recitation of any of: non-volatile memory, a communication link, radar, pattern recognition, artificial intelligence, radial, polar, or 3D perspective; or

    f. a process of communicating information over an RF data link based on camera information, GPS information, and database information accessed from a charge storage memory using database memory management operations.

These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each claim of the Subject Claims of the instant application has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications.

    14.    Mr. Hyatt filed the '569 Application on June 6, 1995. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO implemented in 37 C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

    15.    The '569 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

    16.    Mr. Hyatt has never made a dilatory filing in prosecuting the '569 Application. In contrast, the PTO suspended prosecution on at least nine occasions (7/31/2002, 1/31/2003, 8/18/2003, 4/24/2007, 3/17/2008, 12/30/2008, 9/24/2009, 4/19/2010, and 9/23/2011), and entered new grounds of rejections at least as late as February 2020.

17. The PTO subjected all of Mr. Hyatt's applications, including the instant application, to the Sensitive Application Warning System ("SAWS"), from at least the late 1990s through 2015. In accordance with the terms of the SAWS, examiners lacked authority to allow Mr. Hyatt's patent applications. Moreover, under the terms of the SAWS, examiners and other PTO officials were directed to consider factors that are irrelevant to the statutory criteria for patentability in determining whether or not to permit Mr. Hyatt's applications to issue as patents. The inclusion of Mr. Hyatt's applications in the SAWS prejudiced the PTO in its consideration of Mr. Hyatt's applications, including the instant application.

18. In September 1995, Mr. Hyatt filed a preliminary amendment, and the PTO sent a non-final office action rejecting all claims, which the PTO withdrew and replaced in November 1995.

19. In April 1996, Mr. Hyatt timely responded.

20. In June 1996, the PTO sent a final office action rejecting all claims.

21. In November 1996, Mr. Hyatt filed a notice of appeal; in March 1997, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the office action; and in August 1997, Mr. Hyatt filed a supplemental amendment.

22. In August 1997, the PTO sent a final office action rejecting all claims, which included a restriction requirement. The PTO withdrew and replaced this final office action several days later.

23. In October 1997, Mr. Hyatt filed a request for reconsideration to withdraw the restriction requirement, and that same month, in an examiner's interview, the examiner agreed to vacate the August 1997 final office action and promised to issue a new action.

24. In December 1997, Mr. Hyatt filed a supplemental amendment.

25. In September 1998, the PTO sent a non-final office action rejecting all claims and withdrawing the restriction requirement.

26. In March 1999, Mr. Hyatt timely responded.

27. In August 1999, the PTO sent a final office action rejecting all claims.

28. In February 2000, Mr. Hyatt filed a notice of appeal; in April 2000, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the office action; and in September 2000 and May 2001, Mr. Hyatt filed supplemental amendment.

29. For more than a year and half after the Rule 129(a) submission, the PTO did not take any action on the merits. In December 2001, the PTO sent a non-final office action rejecting all claims.

30. In June 2002, Mr. Hyatt timely responded, and in July 2002, Mr. Hyatt filed a supplemental response.

31. For another more than a year and a half after the June 2002 response, the PTO did not take any action on the merits. Instead, the PTO suspended prosecution three times. In March 2004, the PTO sent a non-final office action rejecting all claims.

32. In September 2004, Mr. Hyatt timely responded.

33. In July 2005, the PTO sent a final office action rejecting all claims, which the PTO withdrew and replaced in August 2005.

34. In February 2006, Mr. Hyatt filed a notice of appeal, and in August 2006, Mr. Hyatt filed an appeal brief.

35. The PTO did not take any action on the merits for more than seven years. Instead, the PTO suspended examination on six different occasions and did not decide Mr. Hyatt's repeated petitions for action.

36. In October 2013, the PTO sent a so-called "Requirement" action that, among other things, purported to require Mr. Hyatt to select 600 claims for examination in applications of the "700 Family" (each of which have the same disclosure as the disclosure in the '569 Application) and to identify any earlier embodiment that falls within the scope of any selected claim that Mr. Hyatt believed was entitled to a priority date earlier than December 22, 1988, or to provide a simple statement that the claim was described in the

written description of parent application Serial No. 07/289,355 (Dkt. #321), filed on that date, excluding documents incorporated by reference.

37. In late 2013, the PTO sent similar Requirements in nearly all of Mr. Hyatt's applications.

38. In March 2014, Mr. Hyatt timely responded to the Requirement.

39. In July 2014, the PTO sent a non-final office action rejecting all claims. The PTO acknowledged that Mr. Hyatt's response was "bona fide" and "fully responsive."

40. In January 2015, Mr. Hyatt timely responded with claim amendments.

41. For more than four more years, the PTO did not take any action on the merits. In February 2019, the PTO sent a non-final office action rejecting all claims.

42. In August 2019, Mr. Hyatt timely responded.

43. In February 2020, the PTO sent a final office action rejecting all claims.

44. In August 2020, Mr. Hyatt filed a notice of appeal and a claim-cancellation amendment, which the PTO entered in September 2020. In February 2021, Mr. Hyatt filed an appeal brief and another claim-cancellation amendment, which the PTO entered in August 2021.

45. For more than another year after the appeal brief, the PTO did not take any action on the merits. In March 2022, the PTO sent an examiner's answer.

46. The PTO's failure to send an examiner's answer within six months violated the commitment it made to this Court in *Hyatt v. PTO*, No. 14-cv-01300-TSE-TCB, ECF 156 (E.D. Va.).

47. In August 2022, Mr. Hyatt timely filed a reply brief.

48. The PTO did not take any action on the merits for another period of more than two and a half years. On January 2, 2025, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

49. *De novo* consideration of Mr. Hyatt's entitlement to a patent on the '569 Application is uniquely necessary due to the PTO's decades-long campaign to prevent Mr.

7

Hyatt from obtaining further patents on his inventions. Beginning in the mid-1990s, when PTO pulled several of Hyatt's applications from issuance, PTO has engaged in concerted action to prevent any of Hyatt's applications from issuing as patents. PTO placed Hyatt's applications into the SAWS program to prevent the mailing of a notice of allowance even where an examiner wished to allow Hyatt's applications. Where Hyatt prevailed before the Patent Board, PTO "recycled" his applications by reopening prosecution after he prevailed before the Board. PTO then began to thwart Patent Board review altogether by placing Hyatt's applications in an administrative purgatory that one federal judge referred to as "never-never land." During this time, PTO misrepresented its intent to act on Mr. Hyatt's applications to at least one federal court. Aspects of that campaign have been attested to in sworn testimony by officials who personally interfered with the examination, issuance, and appeal of Hyatt's applications.

50. Ultimately, after nearly two decades of prosecution, PTO threw out all prior activity and began prosecution anew with the goal of rejecting or forcing Hyatt's applications into abandonment. During this time, the very examiners who were supposed to be impartially examining his applications were creating disrespectful "memes" about him that mirrored the language in the PTO's office actions and were sending emails disparaging his personal character. Meanwhile, PTO management instructed examiners to reject submissions Hyatt had not even made and, within three years of resuming examination, informed a federal court that PTO intended to reject all of Mr. Hyatt's applications. And PTO did, rejecting every claim in every application that the Office had not forced into abandonment, irrespective of the actual merits of the applications.

51. For these reasons, among others, PTO acted in bad faith and prejudiced the proceedings underlying the '569 Application.

### The Written Description Rejections

52. The PTO rejected Subject Claims 209, 345, 435, 447, and 476 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

8

53. The disclosure of the '569 Application describes the claimed subject matter of Subject Claims 209, 345, 435, 447, and 476 in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in that Subject Claim as of the '569 Application's effective filing date.

54. The rejection of Subject Claims 209, 345, 435, 447, and 476 under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, is erroneous.

## The Prosecution Laches Rejection

55. The PTO rejected the Subject Claims and held the '569 Application entirely forfeited under the equitable doctrine of prosecution laches.

56. The rejection for prosecution laches is erroneous.

57. The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '569 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

58. The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

59. The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

60. The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

61. The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

62. The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights under the Patent Act in or as to the '569 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

63. The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

64. The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt, prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the '569 Application.

65. The prosecution laches rejection is erroneous because the PTO has unclean hands.

### The Undue Multiplicity Rejections

66. The PTO rejected all of the Subject Claims under pre-AIA 35 U.S.C. § 112, second paragraph, as allegedly failing to distinctly claim the subject matter that Mr. Hyatt regards as the invention under the doctrine of undue multiplicity.

67. Each of the Subject Claims informs with reasonable certainty about the scope of each claim.

68. Each of the Subject Claims distinctly claims the subject matter that Mr. Hyatt regards as the invention.

69. The Subject Claims are distinguished from all claims that Mr. Hyatt seeks to pursue in all of his other applications because each of the Subject Claims are generally directed to the subject matter identified in paragraph 13 above, whereas Mr. Hyatt does not seek to patent any claims that meet the same descriptions in any other of his applications. Each of the Subject Claims contains further specific limitations. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '569 Application has ascertainable differences in scope from each other.

70. The rejection of the Subject Claims as unduly multiplied under pre-AIA 35 U.S.C. § 112, second paragraph, is erroneous.

### Objections

71. In addition to rejecting the Subject Claims, the PTO has objected to the specification.

72. All objections to the specification, and any objections to the drawings, are erroneous because the specification and drawings comply with the requirements of law.

### Count I: Issuance of a Patent

73. The above paragraphs are hereby incorporated by reference as if set forth fully herein.

74. Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

75. Each of the Subject Claims of the '569 Application was involved in the January 2, 2025, decision of the Patent Trial and Appeal Board.

76. Each of the Subject Claims of the '569 Application is patentable.

77. Each of the Subject Claims of the '569 Application satisfies all applicable legal requirements for issuance of a patent.

78. Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '569 Application.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A. A decree that Mr. Hyatt is entitled to receive a patent for the '569 Application on the Subject Claims;

B. A decree that the rejections of the Subject Claims of the '569 Application are erroneous;

 C. A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the '569 Application;

 D. A decree that the specification and drawings of the '569 Application comply with the requirements of law; and

 E. Such other and further relief as the Court may deem just and proper.

Dated: March 5, 2025         Respectfully submitted,

/s/ Mark W. DeLaquil
MARK W. DELAQUIL (VA Bar No. 68088)
ANDREW M. GROSSMAN*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1527
agrossman@bakerlaw.com
mdelaquil@bakerlaw.com

*Attorneys for Gilbert P. Hyatt*

* Application for admission *pro hac vice* forthcoming